**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 08-4868**

─────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MOHAMMED MUNIR ANWARI, a/k/a Mohammed Munir, a/k/a Khalifa,

        Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:07-cr-00425-CMH-7)

─────────────

Submitted: July 26, 2010        Decided: August 19, 2010

─────────────

Before GREGORY and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Gregory Todd Hunter, Arlington, Virginia; Maria N. Lerner, Kimberly S. Walker, Fatema K. Merchant, FULBRIGHT & JAWORSKI, L.L.P., Washington, D.C., for Appellant. Dana J. Boente, United States Attorney, Lawrence J. Leiser, Assistant United States Attorney, Robert Draba, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mohammed Munir Anwari appeals his conviction and 151-month sentence for one count of conspiracy to import and distribute for the purpose of importation one kilogram or more of heroin in violation of 21 U.S.C. §§ 952(a), 959, 963, and 960(b)(1)(A) (2006) and one count of conspiracy to possess with intent to distribute and to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 846 (2006). On appeal, Anwari alleges district court error in: (1) allowing a fatal variance from the indictment; (2) admitting evidence that was substantially more prejudicial than probative; (3) refusing to direct a verdict of acquittal, and (4) miscalculating the drug weights attributable to him. For the reasons that follow, we affirm.

## I. Indictment Variance

The indictment against Anwari and his co-conspirators alleged that Anwari was involved in heroin transactions in May and August, 2002. At trial, the Government introduced evidence of Anwari's participation in a third transaction, in December 2002. Anwari asserts that allowing evidence of this third transaction was erroneous and should result in vacating of his conviction.

2

As Anwari did not object below, we review this claim for plain error. To demonstrate plain error, a defendant must show that: (1) there was an error; (2) the error was plain; and (3) the error affected his "substantial rights," meaning that it "affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 732 (1993). This court is not required to correct a plain error unless "a miscarriage of justice would otherwise result," meaning that "the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 736 (alteration in original) (internal quotation marks omitted).

A variance occurs when the evidence presented at trial differs materially from the facts alleged in the indictment. United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). However, a variance "does not violate a defendant's constitutional rights unless it prejudices [him] either by surprising him at trial and hindering the preparation of his defense or by exposing him to the danger of a second prosecution for the same offense." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) (when evidence does not alter crime alleged in the indictment, the variance is not fatal).

We need not, however, reach the issue of whether an indictment variance took place in this case. The evidence against Anwari with regard to the first two transactions was

3

significantly compelling such that Anwari can demonstrate no prejudice as a result of the introduction of evidence of the third transaction, particularly under plain error review.

## II.  Allegedly Unduly Prejudicial Evidence

### (a)  Religious Questioning

At the start of the Government's cross-examination of Anwari, the following exchange took place:

The Government:  Mr. Munir, you swore on the Bible. Are you a Christian?

Anwari:  I'm Islam, but I speak a lot of the Bible too.

The Government did not make any further mention of Anwari's religion.  On appeal, Anwari argues that this question was so prejudicial as to necessitate a new trial.  We disagree.

Again, this issue is reviewed for plain error, as no objection was made below.  Under that standard, we cannot find that the Government's question requires reversal.  It is well-settled that evidence of a witness's religion may not be introduced for the purposes of enhancing or attacking the witness's credibility.  See Fed. R. Evid. 610.  The Government argues, however, that the question at issue was designed to ensure that Anwari took his oath seriously, not to impeach his credibility per se.

4

Though this court has never squarely addressed the issue of whether a witness may be examined on the manner and veracity of his oath, at least one of our sister circuits has passed on a similar question. See United States v. Kalaydjian, 784 F.2d 53 (2d Cir. 1986) (affirming district court's order prohibiting appellants from questioning witness on his reasons for taking an affirmation rather than swearing on the Koran). Anwari's claim of error is therefore not without some support.

We find, however, that because the Government only mentioned Anwari's religion once, and that because there is no Fourth Circuit case[*] on point, Anwari cannot demonstrate that allowing the question was plainly erroneous. Moreover, again, the evidence against Anwari was ample, and the Government's isolated question, even if we assume it to have been erroneous, did not rise to the level of being so prejudicial as to affect the integrity of the trial.

(b)  Evidence of Criminal Acts of Co-Conspirators

Anwari next suggests that his conviction should be vacated on the grounds that the Government improperly solicited

---

[*] Anwari cites to United States v. Ham, 998 F.2d 1247 (4th Cir. 1993), for the proposition that we must vacate his sentence. Ham, however, dealt with the introduction of evidence that is significantly more inflammatory than that at issue here, and we find it does not apply.

5

evidence of criminal transactions that took place during a period where Anwari was no longer alleged to have been a part of the conspiracy. We have rejected this argument in the past, and continue to do so today. See United States v. Leavis, 853 F.2d 215 (4th Cir. 1988) (the fact that defendant's co-conspirators pled guilty does not deprive the government of its right to detail the full scope of the conspiracy, even those matters where the defendant was not directly involved).

III. Sufficiency of the Evidence

Anwari next argues that the Government did not introduce evidence sufficient to sustain a conviction because there was insufficient proof that Anwari knew the heroin he is alleged to have distributed was destined for the United States.

"A defendant challenging the sufficiency of the evidence faces a heavy burden." United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007), cert. denied, 128 S. Ct. 1690 (2008). This court reviews a sufficiency of the evidence challenge by determining whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005).

Several witnesses testified that they communicated with Anwari during negotiations, and it was evident that he was aware that the heroin was destined for the United States. In addition, the translator who facilitated the transactions among the co-conspirators testified that he told Anwari the drugs were to be sold in the United States. Finally, the Government introduced evidence of Western Union receipts reflecting that the proceeds of drug transactions in the United States were being transferred to Anwari in Pakistan and Afghanistan. We find from that record that the jury could properly conclude that Anwari knew the drugs were to be sold in the United States.

IV. Reasonableness of Sentence

Finally, Anwari argues that his sentence is per se unreasonable because the district court clearly erred in calculating the relevant drug quantity. The Presentence Report determined that Anwari was responsible for three kilograms of heroin. Anwari argues that this was based on unreliable evidence.

This court reviews the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error. United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999). Clear error occurs when the court, upon reviewing the record as a whole, is "'left with the

7

definite and firm conviction that a mistake has been committed.'" Easley v. Cromartie, 532 U.S. 234, 242 (2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

We have reviewed the record and find that witness testimony as to the drug weight that Anwari allegedly distributed was sufficient to allow the district court to attribute a drug weight of three kilograms to Anwari.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED